**LARRY WHITLOCK**, Individually, and on
behalf of himself and on behalf of all other
similarly situated current and former employees,

                Plaintiff,

v.

**SEVIER COUNTY, TENNESSEE**,

                Defendant.

NO. 3:18-cv-00233-HSM-HBG
FLSA Opt-In Collective Action

**JURY DEMANDED**

## JOINT MOTION TO APPROVE FLSA SETTLEMENT

Named Plaintiff Larry Whitlock ("Named Plaintiff"), individually and on behalf of the Opt-In Plaintiffs who joined this lawsuit (collectively with the Named Plaintiff, the "Plaintiffs"), and Defendant Sevier County, Tennessee, Inc. ("Defendant" or "Sevier County" and collectively with the Plaintiffs, the "Parties") have reached a settlement in the above-captioned case. The Parties now respectfully request that the Court expeditiously approve their settlement of this Fair Labor Standards Act ("FLSA") collective action seeking alleged unpaid overtime compensation and dismiss this case with prejudice.[1] As detailed below, the Court should grant the Parties' Motion because this settlement is a fair, adequate, and reasonable resolution of the Parties' bona fide dispute as to liability and alleged damages under the FLSA.

---

[1] The Parties respectfully request an expeditious approval so that the settlement can be administered and attributed in 2020 for tax and reporting purposes.

## BACKGROUND

### I. Relevant Procedural and Factual Background

On June 12, 2018, the Named Plaintiff filed an action entitled LARRY WHITLOCK, et al. v. SEVIER COUNTY, TENNESSEE, No. 3:20-cv-00233-HSM-HBG, in the United States District Court for the Eastern District of Tennessee (the "Action"). [Doc. 1.] In the Action, the Named Plaintiff alleged that Defendant Sevier County, Tennessee ("Defendant" or "Sevier County") violated the FLSA by failing to pay him and other similarly situated class members for time improperly deducted for meal breaks, time not compensated for training, improperly paying "comp" time, and failure to pay overtime for all shifts. The Named Plaintiff sought damages, penalties, attorneys' fees, and costs, on his behalf and on behalf of other current and former similarly situated Sevier County employees of Sevier County, who also claim also were denied being paid overtime correctly.

On September 28, 2018, Sevier County filed its Answer and Affirmative Defenses to the Complaint, denying the claims and allegations in the Complaint and denying that it had violated the FLSA, and asserting various affirmative defenses to liability. [Doc. 24.]

The parties have engaged in extensive fact investigation and both formal and informal discovery, providing information and data related to the claims and defenses. The Parties focused their efforts on early settlement negotiations. To this end, a mediation was held on October 22, 2019, and a tentative settlement was reached. Utilizing the data provided by Sevier County both before and after the mediation, the Plaintiffs were able fairly evaluate the terms of the agreement and their potential claims, eventually coming to finalize and formally accept this Settlement Agreement, subject to the Court's approval. The Parties believe the settlement represents a reasonable compromise given the disputed matters at issue and the risks of continuing forward

with litigation on the merits.

## II. Terms of the Proposed Settlement Agreement

### A. Settlement Amount and Allocation

The proposed Settlement Agreement ("Agreement") (attached as **Exhibit 1**) has been signed by the parties and was approved by the Sevier County Commission on October 19, 2020. The Agreement contemplates a total payment of a $900,000.00. From this amount, each Plaintiff will receive an amount that is based on the formula outlined in Section 6 of **Exhibit 1**.

The Agreement includes Plaintiffs' Counsel's attorneys' fees and costs, and Plaintiffs' Counsel hereby also moves that its fees and costs be approved by the Court. *See In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (awarding a "reasonable attorney fee from [the common] fund as a whole"). Plaintiffs' counsel spent significant time and resources investigating the case, drafting the Complaint, drafting the Amended Complaint, researching and briefing conditional certification and reviewing the data provided by Defendant in informal discovery in order to formulate a sophisticated damages calculation tool that the Parties used in connection with their extensive negotiations. Plaintiffs' Counsel engaged in negotiations with Defendant's counsel and worked on the Agreement. Plaintiffs' Counsel will also continue to spend additional time finalizing the settlement and distributing the settlement proceeds to Plaintiffs. Plaintiffs' Counsel submits that this fee request, which includes all costs, is reasonable given the amount of work expended and results obtained. Finally, Defendant has agreed to pay this amount as attorneys' fees and costs and does not oppose Plaintiffs' Counsel's request.

The Agreement also includes a service payment to the Named Plaintiff, and Plaintiffs' Counsel also request the Court's approval of such award to the Named Plaintiff. "Numerous

Page **3** of **14**

Case 3:18-cv-00233-HSM-HBG   Document 99   Filed 10/30/20   Page 3 of 14   PageID #: 321

courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred" such as pursuing the class's interests "by filing suit on behalf of the members of the Class and undertaking the responsibilities attendant upon serving as a named plaintiff[.]" *Id*. At *3–*4; *see also Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit. Numerous courts have authorized incentive awards."). The Agreement allocates a portion of the settlement amount to the Named Plaintiff for the time and effort the Named Plaintiff incurred in securing the settlement in this Action (in addition to compensating him for his portion of the overall settlement proceeds). The Named Plaintiff incurred personal risks by filing and participating in this action, spent time and effort in this case in order to confer economic benefits to the class members, and assisted Plaintiffs' Counsel through all stages of this case, including pre-filing investigation, informal discovery, and the settlement process. Finally, Defendant does not oppose such allocation to the Named Plaintiff.

### B. Release of Claims

In exchange for the settlement amounts, settling Plaintiffs have agreed to dismiss the Action with prejudice. Further, each and every settling Plaintiff, on behalf of his/her respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, have agreed to knowingly and voluntarily release and discharge Defendant (and related individuals and entities as described in the Settlement) from all known and unknown claims for overtime compensation, wages, liquidated damages, penalties and interest under the FLSA or applicable state laws (including statutory and common law claims for breach of contract, unjust enrichment, other common law claims relating to wage and hour issues, and any claim for retaliation based upon

changes made to pay procedure, benefits, compensatory time grants and calculations and any other modifications to the overall compensation system after the filing of this lawsuit) arising from each Plaintiff's employment with Defendant up to the date upon which the Court enters an Order granting approval of the Settlement ("Settlement Effective Date").

Additionally, and in consideration of the service payment, the Named Plaintiff, on behalf of his respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, also hereby knowingly and voluntarily release and discharge Defendant (and related individuals and entities as described in the Settlement) from any and all claims and rights of any kind that he may have, whether now known or unknown, including, but not limited to, arising out of or in any way connected with his employment with Defendant, including but not limited to, claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964 (as amended); 42 U.S.C. § 1981 (as amended); the Age Discrimination in Employment Act; the Equal Pay Act; the Americans With Disabilities Act (as amended); Sections 503 and 504 of the Rehabilitation Act of 1973; the Family Medical Leave Act; the Employee Retirement Income Security Act; the Occupational Safety and Health Act; the Workers' Adjustment and Retraining Notification Act, as amended; any state, civil or statutory laws, including any and all human rights laws and laws against discrimination, any other federal, state or local fair employment statute, code or ordinance, common law, contract law, tort, including, but not limited to, fraudulent inducement to enter into this contract, any claim for retaliation based upon changes made to pay procedure, benefits, compensatory time grants and calculations and any other modifications to the overall compensation system after the filing of this lawsuit, and any and all claims for attorneys' fees.

# ARGUMENT

The Parties have reached a settlement that each Party's counsel negotiated at arm's length and each Party believes fairly and reasonably resolves each Parties' claims and defenses. As such, the Court should enter an order approving the settlement accordingly.

## I. The Proposed Settlement Fairly and Reasonably Resolves the Parties Claims and Defenses.

### A. Standard for Approval of Settlement of FLSA Collective Actions

"An employee who has filed a lawsuit asserting FLSA claims against her employer may settle her case subject to judicial approval of the settlement with respect to the FLSA claims." *Thompson v. United Stone, LLC*, No. 1:14-CV-224, 2015 WL 867988, at *1 (E.D. Tenn. Mar. 2, 2015) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n. 8 (1946)). In the absence of "binding authority holding that approval is not necessary," parties have presented district courts in this Circuit with a proposed settlement agreement for the court's review and approval. *Id.; see also Hajiani v. ESHA USA, Inc.*, No. 3:14-CV-594-TAV-HBG, 2017 WL 5163354, at *5 (E.D. Tenn. Nov. 7, 2017).

To approve a FLSA settlement, "a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 3:11-CV-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012) (quoting *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982)). If the proposed settlement "does reflect a reasonable compromise over issues . . . that are actually in dispute the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1354); see also *Salinas v. U.S. Xpress Enterprises, Inc.*, No.113CV00245TRMSKL, 2018 WL 1477127, at *3 (E.D. Tenn. Mar. 8, 2018) ("Courts may

approve an FLSA settlement where such an agreement represented the 'resolution of a bona fide dispute over FLSA provisions.'").

Additionally, a court should also "separately assess the reasonableness of a plaintiff's attorney's fees in approving a settlement under the FLSA, even when the fee is negotiated as part of the settlement rather than judicially determined." *Wills v. Cellular Sales of Tennessee, LLC*, No. 1:12-CV-391-CLC-SKL, 2014 WL 8251539, at *1 (E.D. Tenn. Aug. 18, 2014) (citing *Lliguichuzhca v. Cinema 60, LLC*, 948 F.Supp.2d 362, 366 (S.D. N.Y. 2013)).

### B.  A Bona Fide Dispute Exists Over Liability and Damages.

A bona fide dispute exists between the Parties in this Action. "The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA." *Estes v. Vanderpool Construction and Roofing, Inc.*, 2018 WL 3910999, at *2 (E.D. Tenn. July 30, 2018) (quoting *Edwards v. City of Mansfield*, No. 1:15-CV-959, 2016 WL 2853619, at *3 (N.D. Ohio May 16, 2016)). In reviewing the Agreement, the Court must ensure "that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Id*. (quoting *Edwards*, 2016 WL 2853619, at *3). Courts consider the following factors in determining whether a bona fide dispute exists: (1) the nature of the dispute; (2) the employer's business and type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to the claimed wages; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Salinas*, 2018 WL 1477127, at *3 (citing *Felix v. Thai Basil At Thornton, Inc*., No. 14-cv-02567-MSK-CBS, 2015 WL 2265177 (D. Colo. May 6, 2015)).

A bona fide dispute clearly exists in this case as to whether Plaintiffs worked uncompensated hours off-the-clock, and if any deductions were improper. Plaintiffs claim that they were deductions for time when work was performed, while the Defendant claimed any deductions were permitted as bona fide meal breaks under the FLSA. Defendant specifically denies Plaintiffs' claims and further denies that Plaintiffs are owed any additional wages under the FLSA. Moreover, while Plaintiffs assert that this matter should be certified as a collective action, Defendant contends that the Action could not proceed as to certain individuals on a collective basis due to differences between and among the Plaintiffs.

In addition to the disputes regarding liability and decertification, there is also a dispute regarding damages components such as: how to calculate damages; whether liquidated damages are available; and whether a two-year or three-year limitations period applies under the FLSA.

Defendant believes that liquidated damages are inappropriate, and Plaintiffs face a significant risk that only the shorter two-year limitations period would apply to their claims.

Although the Parties firmly believe in the merits of their respective claims and defenses, given the risk of small potential recovery, the time and expenses associated with extensive litigation, and the uncertainty of future dispositive motion practice, decertification, and trial, the Parties agree that a compromise is appropriate at this stage of the litigation, and is in the best interest of the Parties and the public. The Parties desire to resolve the bona fide disputes within this Action by way of a negotiated settlement payment by Defendant in exchange for releases of claims by all settling Plaintiffs and dismissal of this Action, with prejudice, in order to avoid the time and expenses required with continued litigation. See *Salinas*, 2018 WL 1477127, at *2 ("The law favors compromise and settlement of collective actions."); see also *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements

are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation.").

### C. The Settlement Is Fair and Reasonable.

In addition to resolving the bona fide dispute between the Parties, the Agreement is fair and reasonable, and should be approved. In determining whether a settlement is "fair, reasonable, and adequate," the court may consider several factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the state of the proceedings and the amount of discovery completed; (4) the probability of Plaintiffs' success on the merits; (5) the range of possible recovery, and (6) the opinions of counsel. *Salinas*, 2018 WL 1477127, at *4 (citing *Nutting v. Unilever Mfg.* (U.S.) Inc., 2014 WL 2959481, at *3 (W.D. Tenn. June 13, 2014); see also *International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. General Motors Corp*., 497 F.3d 615, 631 (6th Cir. 2007).

First, there is no collusion that occurred between the Parties or their counsel. The settlement was reached as a result of arm's-length negotiations between the Parties and through experienced and knowledgeable counsel. See *Salinas*, 2018 WL 1477127, at *5 (finding no collusion where the settlement "was the results of highly qualified counsel carefully evaluating the risks and acting in good faith in the best interest of their clients").

Second, there is a significant risk of lengthy litigation and substantial expenses considering the complexity of the case. Without settlement, the Parties will continue to spend extensive time and resources engaging in formal discovery and briefing decertification and dispositive motions. After the resolution of such motions, the Parties would have to incur significant expenses in preparation of pretrial submissions and, eventually, a lengthy trial, as well

as likely post-trial motions. In addition, Defendant will be required to devote management resources to the defense of this Action at a time when it is facing the challenges brought on by the COVID-19 pandemic. In order to avoid the expenditure of such time and resources, the Parties directed their efforts toward an informed and efficient resolution of the Parties' claims. The informal discovery and fact investigation processes of both Parties enabled counsel to assess the respective strengths and weaknesses of each respective Parties' case and reach the conclusion that settlement is in the Parties' best interests.

Third, the proceedings have advanced through initial pleadings, fact investigation and informal discovery. The Parties, so far, have collected and reviewed relevant records and data to evaluate their respective claims and defenses. The Parties have engaged in negotiations with the mutual understanding that continuing with formal discovery, dispositive motion practice, and a decertification motion process would be a difficult, costly, and uncertain process.

Fourth, while the probability of Plaintiffs' success on the merits is uncertain, the proposed settlement amount represents a fair settlement of the Plaintiffs' claims. While the amount each Plaintiff obtains will necessarily depend on his/her dates of employment with Defendant during the limitations period, the settlement is predominantly based on an assumption of 2 hours of allegedly uncompensated work per 24-hour shift. Plaintiffs and their counsel believe this is a fair recovery considering that Defendant had reasonable arguments for little to no recovery, decertification and a two-year limitations period, and against liquidated damages.

Fifth, the range of possible recovery in this case was uncertain. As noted above, Plaintiffs were at risk of recovering little or nothing due to substantive arguments and the possibility of decertification. Moreover, the Parties had very divergent positions on liability overall and damages.

Sixth, the Parties "were represented by experienced counsel, particularly adept at litigating wage and hour matters[.]" *Id*. at *6 (finding this factor weighing in favor of approving the proposed settlement). Plaintiffs were represented by counsel who are well informed and experienced in wage and hour litigation, including class actions and certified collective actions, and were knowledgeable of the risks and benefits of the settlement. Defendant is also represented by counsel who have extensive litigation and settlement experience, including FLSA actions and other collective actions. Counsel for both Parties have advised their respective clients regarding the terms of the Agreement and have recommended approval of the settlement to the clients. Under the circumstances, the Agreement is fair, reasonable, and adequate for Plaintiffs, and the Court should approve the Agreement.

**II.     Plaintiffs' Counsel's Requested Award of Attorneys' Fees and Costs Is Reasonable.**

The proposed amount of attorneys' fees and costs to Plaintiffs' counsel as provided in the Agreement is reasonable and should be approved by the Court. The FLSA provides, "in addition to any judgment awarded to a plaintiff or plaintiffs . . . a reasonable attorney's fees to be paid by the defendant." 29 U.S.C. § 216(b). "It is long established that an award of attorney fees under § 216(b) is mandatory but the amount awarded is within the discretion of the district court." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984). In the Sixth Circuit, the only requirement for awards of attorneys' fees and costs in common fund cases is that the award "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983)). Courts may consider the following factors in determining if attorneys' fees are reasonable: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform

the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. Salinas, 2018 WL 1477127, at *9 (quoting *Hensley et al. v. Eckerhart et al.*, 461 U.S. 424, 433 (1983)).

Here, the proposed attorneys' fees and costs request is reasonable given the result obtained for the Plaintiffs, time expended by Plaintiffs' counsel, and the time yet to be expended in administering the proposed settlement. To date, Plaintiffs' Counsel have spent approximately 800 attorney hours into litigating this matter and compiled approximately $19,000.00 in expenses and costs. See *Salinas*, 2018 WL 1477127, at *9 (quoting In re Auto. Refinishing Paint Antitrust Litig., MDL No. 1426, 2004 U.S. Dist. LEXIS 29162, at *35-36 (E.D. Pa. Oct. 13, 2004) ("There is no reason to reject the request for reimbursement of [expenses] that counsel have spent out of their own pockets in litigating [a class action] case."). Plaintiffs' Counsel fronted all the costs of litigation and Plaintiffs were under no obligation to repay Plaintiffs' Counsel if the case was unsuccessful. Plaintiffs' counsel will also pay the administrative costs out of the attorneys' fees received, which include costs for mailing notices and settlement checks, as well as past and future time finalizing the settlement agreement and the instant motions, and following up with Plaintiffs post-settlement. Furthermore, the attorneys' fees and costs request do not infringe on the Plaintiffs' recovery. See *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (interpreting 216(b)'s attorneys' fees award to allow the employee to "receive his full wages plus the penalty without incurring any expense for legal fees or costs"). Finally,

Defendant does not oppose the payment of the agreed-upon amount of Plaintiffs' Counsel's attorneys' fees, litigation expenses, settlement administration and costs from the settlement amount.

## CONCLUSION

This FLSA collective action settlement is the product of an arm's-length negotiation between Parties' counsel and it resolves bona fide disputes over Plaintiff's FLSA claims. The settlement is fair and reasonable and provides Plaintiffs with significant monetary relief. Accordingly, the Parties jointly and respectfully request that the Court approve the Parties' settlement and the distribution of the settlement amount to Plaintiffs in full as described in their Agreement. Further, Plaintiffs' Counsel request that this Court award reasonable attorneys' fees and litigation costs in the amount requested. Finally, the Parties jointly request that this action be dismissed with prejudice upon the Court's entry of an Order approving the settlement.

Submitted this 30th day of October 2020.

Respectfully Submitted,

*s/J. Russ Bryant*_____
Gordon E. Jackson (TN BPR #08323)
J. Russ Bryant (TN BPR #33830)
Paula R. Jackson (TN BPR #20149)
Robert E. Turner, IV (TN BPR #35364)
**JACKSON, SHIELDS, YEISER, HOLT, OWEN & BRYANT**
Attorneys at Law
262 German Oak Drive
Memphis, Tennessee 38018
Tel: (901) 754-8001
Fax: (901) 759-1745
*gjackson@jsyc.com*
*rbryant@jsyc.com*
*pjackson@jsyc.com*
*rturner@jsyc.com*

&

Robert P. Williams (TN Bar No. 026939)
**R.P. Williams Law Firm, PLLC**
265 North Lamar Blvd, Suite W-South
Oxford, Mississippi 38655
Office: (662) 234-3838
Fax: (662) 769-9992
*robert@williamslawms.com*


*ATTORNEYS FOR PLAINTIFFS*

*-and-*

*s/Marshall W. Stair w/ permission by JRB*
Cheryl Rumage Estes (TN Bar No. 10099)
**LEWIS THOMASON**
40 South Main Street- Suite 2900
Memphis, TN 38103-5529
Telephone: (901) 525-8721
Facsimile: (901) 525-6722
*CEstes@LewisThomason.com*

*&*

Janet Strevel Hayes, BPR #018028
Marshall W. Stair, BPR #027556
**LEWIS THOMASON**
One Centre Square, Fifth Floor
620 Market Street
Post Office Box 2425
Knoxville, TN 37901
(865) 546-4646

*ATTORNEYS FOR DEFENDANT*


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically on this the 30th day of October 2020. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*s/J. Russ Bryant*____
J. Russ Bryant