## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE (the "Agreement") is made and entered by and between named Plaintiff Larry Whitlock ("Whitlock") and Sevier County ("Defendant"). Defendant and Whitlock are collectively referred to herein as the "Parties," and each individually as a "Party." This agreement is made pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act and is subject to the approval of the Sevier County Commission and the United States District Court for the Eastern District of Tennessee.

## RECITALS

A. On June 12, 2018, the named Plaintiff Larry Whitlock (the "Named Plaintiff") filed an action entitled LARRY WHITLOCK, et al. v. SEVIER COUNTY, TENNESSEE, No. 3:20-cv-00233-HSM-HBG, in the United States District Court for the Eastern District of Tennessee (the "Action"). [Doc. 1.]

B. In the Action, the Named Plaintiff alleged that Defendant Sevier County, Tennessee ("Defendant" or "Sevier County") violated the FLSA by failing to pay him and other similarly situated class members for time improperly deducted for meal breaks, time not compensated for training, improperly paying "comp" time, and failure to pay overtime for all shifts. The Named Plaintiff sought damages, penalties, attorneys' fees, and costs, on his behalf and on behalf of other current and former similarly situated Sevier County employees of Sevier County, who also claim also were denied being paid overtime correctly.

C. On September 28, 2018, Sevier County filed its Answer and Affirmative Defenses to the Complaint, denying the claims and allegations in the Complaint and denying that it had violated the FLSA, and asserting various affirmative defenses to liability. [Doc. 24.]

D. In addition to the Named Plaintiff, sixty-nine (69) putative collective members who are



either current or former employees of Sevier County have submitted consents to join the Action. Collectively, those who joined the case will be referred to as Opt-In Plaintiffs. (One withdrew on 8/1/2020).

E. The parties have engaged in extensive fact investigation and both formal and informal discovery, providing information and data related to the claims and defenses. The Parties focused their efforts on early settlement negotiations. To this end, a mediation was held on October 22, 2019, and a tentative settlement was reached. Utilizing the data provided by Sevier County both before and after the mediation, the Plaintiffs were able fairly evaluate the terms of the agreement and their potential claims, eventually coming to finalize and formally accept this Settlement Agreement, subject to the Court's approval.

F. Based upon the investigation of Plaintiffs' Counsel, the informal discovery that occurred, the number of Opt-In Plaintiffs in the case, and taking into account the contested factual and legal issues involved, the expense and time necessary to prosecute the Action through trial, the risks and costs of further prosecution of the Action, the uncertainties of complex litigation, and the benefits to be received pursuant to this Agreement, the Named Plaintiff and Plaintiffs' Counsel have concluded that a settlement with Defendant on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interests of the Plaintiff and the Opt-in Plaintiffs. In particular, the bulk of allegations in the case are limited to allegations of improper deductions for meal breaks which are vigorously disputed by Defendant.

G. Defendant denies the claims asserted in the Action and makes no admission whatsoever of liability or violation of the FLSA or any other statute. Defendant nevertheless desires to settle the Action on the terms set forth in this Agreement for the purpose of avoiding

the burden, expense, and uncertainty of continuing litigation, and for the purpose of putting to rest the controversies engendered by the Action.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** among the Parties, by and through their respective attorneys of record, and subject to the approval of the Court, that in consideration of the foregoing and of the promises and mutual covenants contained herein, and other good and valuable consideration, the Action shall be settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions.

## 1. DEFINITIONS

For purposes of this Agreement, the following definitions shall apply, in addition to the definitions set forth in other sections of this Agreement:

A. "Opt-in Plaintiffs" shall mean all individuals who filed consent forms with the Court requesting to participate in the Action. These individuals are included on **Exhibit A** to this Agreement.

B. "Plaintiff" shall mean the Named Plaintiff and Opt-In Plaintiffs, collectively.

C. "Released Claims" has the meaning set forth in Section 4, *infra*.

D. "Released Parties" means Sevier County, Tennessee, including its predecessors and successors and each of their past, present, and future parents, subsidiaries, owners, elected officials, officers, directors, employees, agents, insurers, and attorneys, and other affiliated persons and entities.

E. "Settlement Effective Date" shall mean the date upon which the Court enters an Order granting approval of the Agreement.

F. "Settling Plaintiffs" shall mean the Named Plaintiffs and all Opt-In Plaintiffs that do not reject the settlement.

Case 3:18-cv-00233-HSM-HBG   Document 99-1   Filed 10/30/20   Page 3 of 26   PageID #: 335

## 2. SETTLEMENT AMOUNT

In consideration for the actions, promises and mutual covenants and releases described herein, the total gross sum of $900,000.00 (the "Settlement Amount") will be made available by Defendant to resolve all Settling Plaintiffs' Released Claims as described in Section 4, *infra*. The Settlement Amount includes all amounts that could be paid by Defendant, including amounts for payments to the Settling Plaintiffs, attorneys' fees, litigation costs, and expenses of Plaintiffs' Counsel, costs incurred in administering this settlement, and service fees to the Named Plaintiff. Under no circumstances shall Defendant be obligated to pay an amount in excess of $900,000.00, except for the Defendant/Employer's share of payroll taxes on the payments made to Settling Plaintiffs as W-2 income.

## 3. NO ADMISSION OF LIABILITY; INADMISSIBILITY OF THIS AGREEMENT; PARTIES' AUTHORITY

This Agreement is a compromise of disputed claims and nothing in this Agreement shall be construed or deemed as an admission of liability, damages, culpability, negligence, wrongdoing, or other unlawful behavior on the part of Defendant at any time or for any purpose, under any circumstances, by the Parties, the Released Parties, or by any third-party. The Parties further acknowledge and agree that neither this Agreement nor the settlement shall be used to suggest an admission of liability in any dispute the Parties or any third-parties may have now or in the future with respect to any person or entity, including Defendant and/or Released Parties. Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Agreement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding, and shall be

Page 4 of 24

inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce its terms.

## 4. RELEASED CLAIMS

Each and every Settling Plaintiff, on behalf of himself/herself, his/her respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, hereby knowingly and voluntarily releases and discharges the Released Parties from all known and unknown claims for overtime compensation, wages, liquidated damages, penalties and interest under the FLSA or applicable state laws (including statutory and common law claims for breach of contract, unjust enrichment or other common law claims relating to wage and hour issues) arising from the Settling Plaintiffs' employment with Defendant up to the Settlement Effective Date, including, without limitation, claims asserted, or that could have been asserted, in the Action, including any claim for retaliation based upon changes made to pay procedure, benefits, compensatory time grants and calculations and any other modifications to the overall compensation system after the filing of this Action.

The Named Plaintiff, on behalf of his heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, also hereby knowingly and voluntarily release and discharge the Released Parties from any and all claims and rights of any kind that he may have, whether now known or unknown, including, but not limited to, arising out of or in any way connected with his employment with Defendant, including any claim for retaliation based upon changes made to pay procedure, benefits, compensatory time grants and calculations and any other modifications to the overall compensation system after the filing of this Action. These claims and rights released

Page 5 of 24

include, but are not limited to, claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964 (as amended); 42 U.S.C. § 1981 (as amended); the Age Discrimination in Employment Act; the Equal Pay Act; the Americans With Disabilities Act (as amended); Sections 503 and 504 of the Rehabilitation Act of 1973; the Family and Medical Leave Act; the Employee Retirement Income Security Act; the Occupational Safety and Health Act; the Workers' Adjustment and Retraining Notification Act, as amended; any state, civil or statutory laws, including any and all human rights laws and laws against discrimination, any other federal, state or local fair employment statute, code or ordinance, common law, contract law, tort, including, but not limited to, fraudulent inducement to enter into this contract, and any and all claims for attorneys' fees.

## 5. DISTRIBUTION OF SETTLEMENT AMOUNT

A.      Of the $900,000.00 Settlement Amount, $281,000.00 will be allocated as attorneys' fees, $19,000.00 will be allocated as costs and expenses of settlement administration, as long as at least 10% of the Plaintiffs do not reject the Settlement, and $580,000.00 will be allocated as an Allocation Fund (as defined below). In the event that more than 10% of the Plaintiffs reject this Settlement, Defendant will reduce the attorney's fees and costs payment ($300,000.00) to Plaintiffs' Counsel on a pro-rata basis based on the percentage of Plaintiffs that reject this Settlement. By way of example, if 11% of the Plaintiffs reject this Settlement, Plaintiffs' Counsel's attorney's fees and costs payment would be reduced by $33,000.00. In this example Defendant would retain the reduction of $33,000.00. To the extent the FLSA requires Court approval of the amount of attorneys' fees and litigation costs and expenses in an FLSA settlement, these attorneys' fees and litigation costs and expenses will be subject to Court approval. Defendant will not oppose Plaintiffs' Counsel's application, if necessary, to the Court

for approval of attorneys' fees and litigation costs in the amounts set forth in this section.

B. The Parties further agree that, in addition to the amounts set forth in subsection A above, that $20,000.00 will be allocated as reasonable service payment for the Named Plaintiff, for the time and effort the Named Plaintiff incurred in securing the settlement in this Action (in addition to compensating him for his portion of the overall settlement proceeds). If the Court requires an application from Plaintiffs' Counsel regarding the service payment, Defendant will not oppose this service payment request.

C. Except as otherwise provided in Section 5.A. of this Agreement, the Parties shall bear their own attorneys' fees, costs, and expenses incurred in the prosecution, defense, or settlement of the Action and other claims being settled. The Settling Plaintiffs, Plaintiffs' Counsel, Defendant, and Defendant's Counsel shall not seek an award of attorneys' fees, costs, or expenses in the Action except as set forth in Section 5.A. supra.

D. Each Plaintiff shall have the opportunity to reject his/her individual settlement offer. Such rejection must be in writing and must be received by Plaintiffs' Counsel no later than the deadline specified in the notice (**Exhibit B**). A non-Settling Plaintiff or Rejecting Plaintiff shall be dismissed without prejudice from the Action and the statute of limitations applicable to a non-Settling Plaintiff's claim shall be tolled for a period of 30 days from the date of the rejection. By way of example, if a Rejecting Plaintiff rejects the settlement on November 10, 2020, and November 10th falls within the rejection window, the Rejecting Plaintiff would have until December 10, 2020 to file a new civil action and maintain the same statute of limitations or look-back period as in the Action. In other words, if the Rejecting Plaintiff opted into the Action on January 1, 2019, his or her statute of limitations would look back from January 1, 2019. Rejecting Plaintiffs will not be bound by the Release outlined in Section 4, *supra*. Plaintiffs'

Counsel will advise Defendant's counsel of the receipt of any such rejections within seven (7) days of receipt of the written rejection. The individual settlement amount(s) allocated to non-Settling Plaintiffs will be retained by Defendant.

## 6. CALCULATION OF SETTLEMENT ALLOCATION TO PLAINTIFFS

After the payment for attorneys' fees and the payment for litigation costs and expenses, and the service payment to the Named Plaintiff as outlined in Section 5, the amount allocated from the Settlement Amount to the Settlement Plaintiffs is $580,000.00 (the "Allocation Fund"). The Allocation Fund will be allocated to the Named Plaintiff and Opt-In Plaintiffs as reflected on **Exhibit A** to this Agreement.

The formula used for the allocation was developed by Plaintiffs' Counsel and takes into account the following:

(i) Improper Deductions. When an employee worked over forty (40) hours in a week, the employee was awarded one (1) hour for every twelve (12) hour shift and two (2) hours for every twenty-four (24) hour shift. This constituted the bulk of the back wages.

(ii) Comp Time. Taking information from the pay records, the employee was awarded half time for comp time which was not compensated at the overtime rate.

(iii) Unpaid shift. Employees were awarded half time for hours worked in excess of the typical five (5) shifts per pay period.

(iv) Unpaid training. Employees were awarded ten (10) hours of unpaid training.

(v) Liquidated Damages. After deducting 1/3 of the total settlement for attorneys' fees and costs enough, funds were leftover to equal approximately 20% of the class' backpay. In Exhibit A and for the purpose of the formula, this is earmarked

Page 8 of 24

as liquidated damages.

This formula was developed by Plaintiffs' Counsel and shall not be construed and is not an admission of liability by the Defendant.

While the breakdown for each Plaintiff based on the formula outlined above equates to roughly 100% of his/her individual total in alleged unpaid back wages and roughly 20% in liquidated damages, for the purposes of settlement, checks will be issued allocating 50% of the total due the Plaintiff as back wages and 50% of the total as liquidated damages.

7. **PAYMENT TO PLAINTIFFS: TAXATION AND NO TAX ADVICE**

A.     Each Plaintiff will receive two checks from Defendant, which will total the settlement amount total allocated to that Plaintiff in Exhibit A. The first check will be allocated as wages, and payroll taxes will be withheld from this payment, which will be reported on an IRS Form W-2. The second check will be for an equal amount but will be for liquidated damages, and therefore, will not have payroll taxes withheld. To become a "Settling Plaintiff" all a Plaintiff must do is not reject the Settlement within the time period and method described in **Exhibit B**.

B.     Each Settling Plaintiff shall be obligated to obtain his or her own independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments and/or other remuneration he or she receives or obtains pursuant to this Agreement, and shall further assume the responsibility of remitting to the Internal Revenue Service and any other relevant taxing authorities any and all amounts required by law to be paid out of any monies received, or other remuneration obtained, under this Agreement, without any contribution whatsoever from any of the Released Parties or Plaintiffs' Counsel. Nothing in this Agreement shall be construed as Defendant or Plaintiffs' Counsel providing any advice regarding the

Case 3:18-cv-00233-HSM-HBG   Document 99-1   Filed 10/30/20   Page 9 of 26   PageID #: 341

reporting or payment of taxes or the tax consequences of a Settling Plaintiffs' participation in any portion of this Agreement.

C.     Plaintiffs' Counsel shall be responsible for distributing the Notice of Settlement in the form attached hereto as **Exhibit B** and the settlement checks to the Settling Plaintiffs.

D.     Provided that the Court approves the settlement, the claims of any Settling Plaintiffs asserted in the Lawsuit will be dismissed with prejudice and the Settling Plaintiffs will be bound by the release set forth in Section 4, supra.

## 8.  SEEKING COURT APPROVAL

A.     Within 14 days after execution of this Agreement and approval by the Sevier County Commission, the Parties will file a Joint Motion to Approve Settlement with the Court. The Parties will cooperate in the drafting and submission of this Joint Motion.

## 9.  SETTLEMENT PAYMENT AND DISTRIBUTION OF CHECKS

A.     Defendant shall provide to Plaintiffs' Counsel the settlement checks for each Plaintiff (except for the amounts allocated for the Named Plaintiff as set forth in subsection C of this paragraph) within fourteen (14) days after the Settlement Effective Date. Checks to Settling Plaintiffs shall include the following release language on them:

> I, on behalf of myself, my respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors--in-interest, and assigns, hereby knowingly and voluntarily release and discharge Sevier County, Tennessee, including its predecessors and successors and their past, present, and future parents, subsidiaries, elected officials, owners, officers, directors, employees, agents, insurers, and attorneys, and other affiliated persons and entities, from any and all known and unknown claims for overtime compensation, minimum wages, liquidated damages, penalties and interest under the FLSA or applicable state laws (including statutory and common law claims for breach of contract, unjust enrichment or other common law claims relating to wage and hour issues) arising from my employment with Sevier County, Tennessee.

B.     Checks to Plaintiffs also shall indicate on their face that they will be void after

ninety (90) days. Accordingly, Settling Plaintiffs shall have ninety (90) days to cash, deposit, or otherwise negotiate each of their settlement checks. Settlement checks that have not been cashed, deposited, or otherwise negotiated within 90 days shall be null and void. Any funds from such settlement checks shall be retained by Defendant.

C.     Within fourteen (14) calendar days after the Settlement Effective Date, Defendant shall provide to Plaintiffs' Counsel one settlement checks made payable to the Named Plaintiff, Larry Whitlock, each in the amount of $20,000.00. The check shall be allocated for the service award as described in Paragraph 5(B), supra, and shall be reported on an IRS Form 1099 provided to the Named Plaintiff by Defendant.

D.     Within thirty five (35) calendar days after the Settlement Effective Date, Defendant shall pay the attorneys' fees and litigation costs and settlement administration and expenses approved by the Court to Plaintiffs' Counsel via wire transfer or by check. Defendant will issue Jackson, Shields, Yeiser, Holt, Owen & Bryant an IRS Form 1099 for the attorneys' fees and litigation costs and settlement administration and expenses approved by the Court.

## 10. REASONABLE COMPROMISE OF BONA FIDE DISPUTE

The Parties agree that the terms of this Agreement represent a reasonable compromise of disputed issues, arising from a bona fide dispute over FLSA coverage and the merits of Plaintiffs' claims and alleged damages and agree to represent the same to the Court. The Parties further agree that the settlement is a fair, reasonable, and adequate resolution of Settling Plaintiffs' claims and is in the best interests of the Settling Plaintiffs.

## 11. VOIDING THE AGREEMENT

A.     If the Court refuses to approve the Agreement, or any material part of it, Counsel for any party to this Agreement shall have the right to terminate this Agreement by providing

Case 3:18-cv-00233-HSM-HBG   Document 99-1   Filed 10/30/20   Page 11 of 26   PageID #: 343

written notice of their election to do so to counsel for the other party hereto within fifteen (15) calendar days after the Court's refusal. If, in approving this Agreement, the Court reduces the amount of payment that will be made to Plaintiffs' Counsel for attorneys' fees or costs, such reduction shall not be considered a material change to this Agreement and this Agreement shall remain enforceable.

B.      In the event that Counsel for any party exercises the right of termination set forth in Section 11(A), supra, then this Agreement shall be deemed null and void, of no force and effect, inadmissible as evidence and of no probative value, and the Parties hereto represent, warrant, and covenant that neither the Agreement nor any discussions, conversations, or negotiations leading to execution of the Agreement, will be used or referred to for any purpose whatsoever.

## 12. DISMISSAL OF ACTION

If the Court approves this Agreement, the Parties shall request the Court to enter a Final Approval Order and Judgment that specifically includes provisions that:

a.  Dismiss with prejudice all claims by Settling Plaintiffs in this Action;

b.  Dismiss without prejudice all claims by non-Settling Plaintiffs, if any;

c.  Reserve continuing jurisdiction over the construction, interpretation, implementation, and enforcement of this Agreement and over the administration and distribution of the benefits provided by this Agreement.

## 13. MUTUAL FULL COOPERATION

Counsel for the Parties agree to and shall use their best efforts to fully cooperate with each other in good faith and to take all actions reasonably necessary to implement the terms of this Agreement.

## 14. CONSTRUCTION

The Parties agree that the terms and conditions of this Agreement are the result of lengthy and intensive arm's-length negotiations between the Parties, with Plaintiff and the Opt-In Plaintiffs represented by Plaintiffs' Counsel, and that this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of this Agreement. The Parties request that before declaring any provision of this Agreement invalid, the Court shall first attempt to construe all provisions valid to the fullest extent possible consistent with applicable precedents and the intent expressed in this Agreement.

## 15. CAPTIONS AND INTERPRETATIONS

Section titles or captions contained in this Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions.

## 16. MODIFICATION

This Agreement, including the attached Exhibits A-B, may not be changed, altered, or modified, except in a writing signed by counsel for the Parties and approval of the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by counsel for the Parties and approved by the Court.

## 17. INTEGRATION CLAUSE

This Agreement and the attached Exhibits A-B, which are incorporated fully herein, contain the entire agreement between the Parties relating to the settlement of the Action, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged in this

Agreement. No rights under this Agreement may be waived except in a writing signed by the counsel for the Parties as set forth in Section 11 or 16, supra.

## 18. MUTUAL NON-DISPARAGEMENT

The Named Plaintiff and Opt-In Plaintiffs agree not to make any defamatory or disparaging statements about Defendant or its employees, products and/or business practices. Defendant and its officers, managers, employees, agents and representatives similarly agree not to make any defamatory or disparaging statements about the Named Plaintiff to anyone, including, but not limited to, any prospective employers of Plaintiff. Defendant shall not be responsible for unauthorized remarks or expressions of personal opinion made by any employee not acting within his/her capacity and without Defendant's knowledge or consent. This provision does not limit either Party's right to give truthful responses in response to a lawful subpoena based on facts known to the Party.

## 19. BINDING ON ASSIGNS

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

## 20. COUNTERPARTS & SIGNATURES

This Agreement may be executed in counterparts, and when counsel have signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement. This Agreement may be executed by facsimile signatures, PDF, or email, which shall be deemed to be originals.

## 21. APPLICABLE LAW

This Agreement shall be governed by and construed in accordance with federal law and the law of the State of Tennessee, to the extent federal law does not apply.

[THIS SPACE IS INTENTIONALLY LEFT BLANK. SIGNATURE PAGE FOLLOWS]

Case 3:18-cv-00233-HSM-HBG   Document 99-1   Filed 10/30/20   Page 15 of 26   PageID #: 347

IT IS SO AGREED.

Dated: 10-28-2020 _____ **Plaintiff Larry Whitlock**

By: _____

Larry Whitlock

Dated: 10-28-2020 _____ **Jackson, Shields, Yeiser, Holt, Owen & Bryant**

By: _____

J. Russ Bryant
Attorney for Plaintiffs

Dated: 10-30-2020 _____ **Sevier County**

By: _____

Name: Larry Waters

Title: Mayor, Sevier County

# EXHIBIT "A"

Page 17 of 24

| Name | Amount |
|------|-------:|
| ANDERS, CRAIG | $ 500.00 |
| ANDERSON, ADAM | $ 15,466.13 |
| BENINGO, MICHAEL | $ 13,168.92 |
| BERELSMAN, ANDREW | $ 1,541.54 |
| BERRIER, MIKE | $ 12,258.03 |
| BETTS, CADEN | $ 7,468.46 |
| BOATRIGHT, JASON | $ 6,964.39 |
| BRADFORD, PATRICK | $ 1,609.43 |
| BREEDEN, CHARLIE | $ 5,989.78 |
| BUCHANAN, BRIAN | $ 500.00 |
| BULL, GREG | $ 14,701.60 |
| CAPPS, DAVID | $ 9,105.38 |
| COLLINS, JACKIE | $ 16,225.58 |
| CRUETON, TODD | $ 2,968.99 |
| DAVIS, ROD | $ 13,773.77 |
| DUNN, RENEE | $ 500.00 |
| DYKES, ROD | $ 13,384.53 |
| FARRAGUT, CHRIS | $ 500.00 |
| FLEMING, JASON | $ 18,137.32 |
| FRIEDRICH, MICHAEL | $ 15,004.04 |
| FRY, LEE | $ 13,550.71 |
| FUSON, DAVID | $ 13,852.20 |
| GALENTINE, JOE | $ 1,060.98 |
| GANN, LAURA | $ 2,425.05 |
| GREGG, BLAKE | $ 6,841.29 |
| HARMON, ASHLEY | $ 6,996.18 |
| HARMON, DANIEL | $ 1,822.32 |
| HECKMAN, CHRIS | $ 2,460.16 |
| HODSON, KENNETH | $ 909.41 |
| HUGHES, TIM | $ 12,564.00 |
| JENKINS, SHANDY | $ 500.00 |
| JESSE, CH | $ 500.00 |
| KISER, CHRIS | $ 16,500.72 |
| KNOX, ROBERT | $ 15,649.57 |
| KYKER, JEANNE | $ 12,711.31 |
| LAMAR, PHILLIP | $ 5,598.38 |
| LEWIS, BUDDY | $ 718.12 |
| LINK, ANDREW | $ 500.00 |
| LOZANO, NICKO | $ 1,648.79 |
| MAPLES, CORY | $ 13,724.85 |
| MCCALL, BRYAN | $ 11,151.21 |
| MCCARTER, JOHNNY | $ 14,220.44 |
| MESSER, BRIAN | $ 1,919.74 |
| MOUNT, DUSTIN | $ 12,388.62 |
| OCONNOR, MICHAEL | $ 12,275.85 |
| OGLE, BARRY | $ 2,595.73 |

| | | |
|---|---|---:|
| OGLE, CECILIA | $ | 500.00 |
| PICKENS, BENNY | $ | 14,662.82 |
| POSTON, JOSH | $ | 9,058.55 |
| PRATT, ANDREW | $ | 3,703.70 |
| ROGERS, ANDREW | $ | 3,790.04 |
| SCRUGGS, ANDREW | $ | 9,572.73 |
| SMITH, NANCY | $ | 13,954.00 |
| SPENCE, KACIE | $ | 3,130.60 |
| STELZMAN, JASON | $ | 16,679.61 |
| STINNETT, DAVID | $ | 19,049.85 |
| SUTTON, CINDY | $ | 500.00 |
| TATHAM, BEN | $ | 3,962.15 |
| THOMPSON, PETE | $ | 9,900.58 |
| THOMPSON, YALONDA | $ | 1,701.08 |
| TIMMERMAN, BRODY | $ | 12,084.00 |
| VICK, AUSTIN | $ | 500.00 |
| VILLANEUVO, MATT | $ | 6,872.31 |
| WALIZER, TRENT | $ | 1,358.35 |
| WALKER, DAVID | $ | 16,478.55 |
| WEDLOCK, IAN | $ | 19,086.73 |
| WHALEY, AARON | $ | 20,953.68 |
| WHITLOCK, LARRY | $ | 25,002.76 |
| ZINNEMAN, MICHELLE | $ | 14,650.92 |

# EXHIBIT "B"

Page 18 of 24

Case 3:18-cv-00233-HSM-HBG   Document 99-1   Filed 10/30/20   Page 20 of 26   PageID #: 352

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

**LARRY WHITLOCK**, Individually, and on
behalf of himself and on behalf of all other
similarly situated current and former employees,

Plaintiff,

v.

**SEVIER COUNTY, TENNESSEE,**

Defendant.

NO. 3:18-cv-00233-HSM-HBG
FLSA Opt-In Collective Action

**JURY DEMANDED**

## COLLECTIVE ACTION SETTLEMENT NOTICE

**IF YOU RECEIVED THIS NOTICE YOU ARE ELIGIBLE TO PARTICIPATE IN THE SETTLEMENT OF
THIS COLLECTIVE ACTION LAWSUIT.**

**THIS NOTICE SUMMARIZES THE TERMS OF THE SETTLEMENT AND EXPLAINS
YOUR RIGHTS UNDER THE SETTLEMENT.**

**PLEASE READ THIS DOCUMENT CAREFULLY.**

### 1. What is the Lawsuit About?

The United States District Court for the Eastern District of Tennessee ("Court") presides over this Lawsuit, which was filed on June 12, 2018, by Named Plaintiff Larry Whitlock ("Named Plaintiff") against Defendant Sevier County, Tennessee ("Sevier County"). The Named Plaintiff brought the Lawsuit as an alleged "collective action" on behalf of himself and others who worked for Sevier County as emergency personnel from June 12, 2015 to April 30, 2019. This Lawsuit alleges that emergency personnel employees were not paid overtime correctly and were not compensated for all hours worked.

Page 19 of 24

Sevier County disagrees with the Named Plaintiffs' claims and denies any violation of the FLSA or any other laws. Sevier County asserts that the Named Plaintiff and other employees were paid for all hours worked.

### 2. Why did I get this Notice?

You are receiving this Notice because the Parties have reached a court-approved settlement of this Lawsuit. You have submitted a Consent to Join the Lawsuit to the Court. You have the right to learn about the settlement of the Lawsuit and be bound by the terms of the settlement, if you choose to participate.

With this Notice, you are receiving a settlement check which is explained below.

To participate in the settlement, all you need to do is cash your settlement check.

You do not need to contact anyone or sign any paperwork.

### 3. What does the settlement provide?

The Court approved the settlement on [insert date of approval]. Under the settlement, you are entitled to a gross settlement amount of $[insert Payout Amount]. The checks enclosed here represents your settlement payment and is considered wages for which ordinary payroll and income taxes have been withheld by Sevier County, as well as an equal amount in liquidated damages. You will not pay any additional attorney's fees or expenses out of your individual settlement payment as the Court separately awarded those amounts when the Court approved the settlement. Your settlement amount was calculated based on Sevier County records for the dates covered by the lawsuit.

### 4. Why is there a settlement?

The settlement is a compromise. It allows the parties to avoid the costs and risks of further litigation and provides money to the Named Plaintiff and you without further significant

Page 20 of 24

delay. In reaching this settlement, Sevier County has not admitted that it violated any laws and has specifically denied that it violated any laws. Had the Parties not agreed to this settlement, you may not have recovered anything at all from the Lawsuit.

### 5. What is the impact of the settlement on me?

As a result of the settlement, if you choose to participate, you release all legal claims you may have against Sevier County or any of its successors, predecessors, parents, subsidiaries, officers, directors, managers, employees, agents, or affiliates seeking damages for all unpaid wages and overtime pay for the workweeks under the Settlement Agreement under the Fair Labor Standards Act, or any other state or local statute, regulation, or legal theory arising on or after June 12, 2015 through [insert date of approval], including any claim for retaliation based upon changes made to pay procedure, benefits, compensatory time grants and calculations and any other modifications to the overall compensation system after the filing of this Lawsuit. In addition, you will waive all such unpaid wages and overtime claims for those workweeks arising under the Federal Fair Labor Standards Act, 29 U.S.C. § 201, et seq.

### 6. What is the acceptance process?

If you wish to claim your allocated share of the settlement all you need to do is endorse and cash the enclosed checks.

You will have 90 days from the date on the settlement checks to cash them. After that date any uncashed checks will be voided.

If you wish to be excluded from this settlement, you must return the enclosed checks and send in a written rejection that includes all of the following:

- Your legal name, current address, date and telephone number;

Page 21 of 24

- The name and number of the lawsuit: Whitlock v. Sevier County, TN - NO. 3:18-cv-00233-HSM-HBG

- A statement, signed personally by you, clearly stating that you reject this settlement and want to be excluded from it.

All rejections must be sent to Plaintiffs' Counsel so that it is received by Plaintiffs' Counsel by (Two weeks from date of mailing)_____, 2020, AT 5:00 PM CENTRAL TIME. You may either mail it in the postage-paid envelope provided with this Notice, fax it to _____ or email it to _____.

Plaintiffs' Counsel will provide all rejections to Sevier County's lawyers.

Any rejection must contain your personal signature which shall indicate that you wish to reject the settlement. You cannot exclude yourself by phone or by any means that does not meet the requirements stated above. Further, if you do not follow these instructions properly, you will lose your right to exclude yourself. There are no exceptions. Unless you properly sign and submit your rejection, you will be bound by any judgment in this case, and you will not be permitted to pursue any pending or future litigation regarding matters resolved in this settlement. Should you wish to exclude yourself from this settlement, it is important that you follow these instructions carefully.

If you reject this settlement, you will not get the benefits of the settlement. You will not be included in the settlement and your claims will be dismissed without prejudice from this case. By rejecting the settlement, you retain any right you may have to file or proceed with your own lawsuit against Sevier County regarding the claims raised in this lawsuit. Should you do so, you will have to represent yourself or hire and pay your own lawyer for that lawsuit. If you do reject this settlement so that you can start or continue your own lawsuit against Sevier County for

claims covered by this lawsuit, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations. The statute of limitations will be tolled for a period of 30 days from the date of the rejection for Plaintiffs who reject this settlement.

It is very important that you either cash the checks within the time frame mentioned above, or submit a written rejection.

### 7. Do I have a lawyer in this case?

Yes. The Court has designated the following law firm to serve as counsel and represent the interests of the Named Plaintiff and all other individuals covered by this Settlement:

J. Russ Bryant, Esq.
JACKSON SHIELDS YEISER, HOLT,
OWEN & BRYANT
262 German Oak Drive
Memphis, TN 38018
(901) 754-8001
rbryant@jsyc.com

Lawyers and staff members from this law firm are available to answer your questions in strict confidence. If you call the firm, please identify yourself as a plaintiff in the "Sevier County FLSA Lawsuit."

### 8. How do I obtain more information?

This Notice summarizes the most important aspects of the proposed settlement. You can obtain further information by contacting the law firm listed above.

DO NOT CONTACT THE COURT REGARDING THIS SETTLEMENT.

THE COURT MUST REMAIN NEUTRAL IN THIS MATTER AND CANNOT OFFER YOU ADVICE OR RESPOND TO QUESTIONS.

Page 23 of 24

Page 24 of 24